UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ALLYSON J. ROBINSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:08-CV-02279-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

The plaintiff, Allyson J. Robinson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a Period of Disability ("PD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Ms. Robinson timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Robinson alleged disability due to depression and anxiety. (Tr. at 25.) She was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 226.) She has past relevant work experience as a certified nurse assistant, nursing home housekeeper, cashier, and short order cook. (Tr. at 26.) Ms. Robinson initially alleged disability beginning September 15, 2005, but later amended her onset date to October 31, 2006. (Tr. at 20.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends

on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii),  416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and

past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Robinson meets the insured status requirements of the Social Security Act through the date of his decision. (Tr. at 22.) He further determined that Ms. Robinson has not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* According to the ALJ, Ms. Robinson's combination of impairments - consisting of a major depressive disorder and anxiety - qualify as "severe" based on the requirements set forth in the regulations, but her history of cervical fusion is non-severe. *Id.* The ALJ found that Ms. Robinson's impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23.) He determined that Ms. Robinson has no exertional limitations, but has moderate limitations in her daily activities, social functioning, persistence, and pace. Due to these moderate limitations, she would be restricted to "simple, repetitive routine work tasks of an unskilled nature with occasional interaction with the public and with co-workers. She should

deal with things rather than people and should not perform production rated pace work," but rather should perform "goal-oriented activities." *Id.*

The ALJ found that Ms. Robinson is capable of performing past relevant work as a nursing home housekeeper and a short order cook. (Tr. at 26.) He concluded his findings by stating that the Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 15, 2005 through the date of this decision." *Id.*

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Robinson contends that the Commissioner's decision finding her not disabled is due to be reversed because it is not supported by substantial evidence and because the ALJ failed properly to develop the record. She argues that by not citing Global Assessment of Functioning ("GAF") scores that she was given at various times by treating and examining physicians, according too much weight to evidence of her daily activities, and failing to order a consultative examination, the ALJ committed reversible error. (Doc. 8.)

   A.   GAF Scores.

Plaintiff contends that by not mentioning Plaintiff's GAF scores ranging between 30 and 50, the ALJ failed fully and fairly to develop the record. The *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") indicates that a GAF between 30 and 50 indicates impairment which can range from "inability to function in almost all areas" to "serious" impairment in social, occupational, or school functioning. (DSM-IV at 32.) Plaintiff argues that because she was assessed GAFs between 30 and 50 at various times relevant in the record, the ALJ was substantially incorrect in

stating that "there is no evidence to show that any treating source has opined that the claimant's impairments would result in any significant limitations." (Tr. at 25.)   The ALJ's failure to mention Plaintiff's GAF scores, she argues, demonstrates a failure to properly develop the record.

Administrative hearings under the Social Security Act are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971).  It is the ALJ's duty and responsibility "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  The ALJ is required to develop the record fully and fairly and probe conscientiously for all of the relevant information. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981).  However, it is not enough on appeal to the District Court simply to show that the ALJ failed to mention certain information in his decision.  Rather, there must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

In the present case, the ALJ's failure to specifically reference

Plaintiff's GAF scores in his decision does not amount to an omission causing unfairness or clear prejudice. While the ALJ was required to consider each medical opinion, and give reasons for rejecting any medical opinion, *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987), the GAF scores given to Plaintiff were themselves only a single element of detailed medical opinions assessing Plaintiff's mental health. The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorder listings." *Revised Medical Criteria for Evaluating Mental disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50,764-765 (Aug. 21, 2000). There is no evidence that the ALJ ignored or improperly rejected the medical opinions in the record; Plaintiff's complaint is simply that he did not deal directly and specifically with one particular element of those opinions - her GAF scores.

Importantly, the GAF scores between 30 and 50 cited by Plaintiff (Doc. 8) were all assessed between October and November 2005, the time when Plaintiff's medical records indicate she was at her most psychologically vulnerable. On October 14, 2005, Plaintiff was hospitalized for five days with suicidal ideation, decreased energy, decreased concentration,

anhedonia, suicidality, and psychosis. (Tr. at 118.) Her GAF score upon admission to the hospital was 30; upon discharge it was 50. *Id*. Plaintiff takes issue with the ALJ's statement that subsequent to her hospitalization, her medical records "have not shown a severity of depression or anxiety which would be disabling." (Tr. at 25.) To contradict this statement, Plaintiff points out that post-hospitalization records also showed GAF scores below 50. Specifically, on October 25, 2005 (Tr. at 127A) and November 8, 2005 (Tr. at 126A), Plaintiff was assessed a GAF score of 45. It appears, however, that November 8, 2005 - less than a month after Plaintiff's hospitalization for mental disorder - was the last time that Plaintiff was assessed any GAF score suggesting a disabling level of depression and/or anxiety. In fact, the record shows that Plaintiff failed to attend a scheduled appointment on November 22, 2005, possibly suggesting improvement in a patient who a month earlier checked herself into the hospital. (Tr. at 123.) *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003), *quoting Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) ("[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability"). While the Court is not prepared to opine that an ALJ's

failure specifically to cite to GAF scores will never cause "clear prejudice," in this case it is apparent that the ALJ's omission was harmless.

    B.    Daily Activities.

Plaintiff's next argument is that the ALJ placed undue emphasis on Plaintiff's reported daily living activities. (Doc. 8.) In her hearing before the ALJ, the Plaintiff testified that she performs various daily activities, including checking the mail, watching TV, doing housework, visiting with family, and living with her elderly mother and 21-year-old son. (Tr. at 227-38.) Plaintiff contends that these activities do not demonstrate that she is capable of work activity and do not constitute substantial evidence supporting the ALJ's disability determination. (Doc. 8.)

A claimant's daily activities are one of several relevant factors to be considered by the ALJ in addition to the objective medical evidence. 20 C.F.R. 404.1529(c)(3). Plaintiff is correct in stating that participation in everyday activities such as housework does not disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Although evidence of such participation does not automatically disqualify a claimant, it is a relevant factor to be considered by the ALJ when evaluating

the claimant's subjective statements regarding the intensity and disabling effects of her symptoms.

For instance, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms she alleged, but he found that her statements regarding the intensity, persistence, and limiting effects of those symptoms was not completely credible. (Tr. at 25.) The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing

court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the…standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot simply be a "broad rejection." *Id.* at 1210.

Here, the ALJ cited several reasons for finding Plaintiff's claims about the intensity and disabling effects of her symptoms not entirely credible. In addition to noting that Plaintiff's depression and anxiety had not appeared to result in significant limitations to her daily activities, the ALJ pointed to Plaintiff's medical records and her occasional noncompliance with her treatment regimen. Plaintiff's medical records since her Fall 2005 hospitalization have tended to indicate improvement, and the ALJ reasonably concluded that since the period surrounding her hospitalization, Plaintiff's medical records have not indicated a disabling level of depression and anxiety. (Tr. at 25.) In addition, Plaintiff's noncompliance with her

treatment regimen - by not attending scheduled counseling sessions - is evidence that her symptoms do not have as limiting an effect as she alleges. *Ellison*, 355 F.3d at 1275.  The ALJ's reliance on Plaintiff's medical records, noncompliance with her treatment regimen, and daily activities to make his credibility determination was explicit, adequate, and supported by substantial evidence, and therefore was not reversible error.

    C.    Consultative Exam.

Finally, Plaintiff argues that the ALJ should have ordered a consultative psychological examination.  (Doc. 8.)  It is reversible error for an ALJ not to order a consultative examination if one is necessary to enable him to make an informed decision.  *Ford v. Sec'y of Health & Human Serv.*, 659 F.2d 66, 69 (5th Cir. 1981).  In this case, however, the record contains a plentitude of medical information from Plaintiff's treating and non-treating sources on which the ALJ relied to make his decision.  (Tr. 118-197.)  This is not a case in which the ALJ had no reliable medical evidence on which to base a determination regarding Plaintiff's mental impairments.  Plaintiff has been treated for years for these impairments and those records were made available to the ALJ.  In fact, in Plaintiff's brief to this Court she relies on

those records to build her argument.  *See* Part III(A) *supra*.  Certainly enough information was contained in those records to enable the ALJ to make an informed decision.  Hence this Court cannot conclude that the ALJ committed reversible error by not ordering a consultative examination.

It appears to this Court that the ALJ specifically addressed Plaintiff's allegations of disabling depression and anxiety in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony.  The objective medical evidence does not confirm the severity of the alleged symptoms.  Substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not cause disabling limitations, and instead shows that she could work with the limitations noted by the ALJ in his RFC determination.

IV. Conclusion.

Upon review of the administrative record, and considering all of Ms. Robinson's arguments, the Court finds that the Commissioner's decision that Ms. Robinson is not disabled is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 2nd day of March 2010.

/s/ L. Scott Coogler
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE